## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| AXIOM SPACE, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. |
| | § | **JURY DEMANDED** |
| OPUS SOLARIS, LLC, and | § | **DAMAGES, PRELIMINARY** |
| BETH DEAN-POPE, | § | **INJUNCTION, AND PERMANENT** |
| Defendants. | § | **INJUNCTION REQUESTED** |

### COMPLAINT

This is a case about theft. Plain and simple. Plaintiff Axiom Space, Inc. placed trust in Defendant Beth Dean-Pope ("Dean-Pope"), as memorialized in multiple agreements, and she betrayed that trust by stealing from Axiom Space. In doing so, Dean-Pope conspired with Defendant Opus Solaris, LLC by emailing confidential and sensitive information to that company, thereby committing a clear violation of her express and implied employment obligations with Axiom Space. She later joined Vast Space LLC, a space exploration company that builds space stations, and she now serves as that company's Vice President of Commercial Partnerships. After several contractually obligated attempts (all of which failed despite Axiom Space's diligence) to reasonably resolve this matter by simply requesting that Dean-Pope preserve evidence, that she return what she stole, that she abide by her commitments, and that she cooperate with a forensic investigation to safeguard Axiom Space's property, Plaintiff now files this Complaint and alleges the following:

### NATURE OF THE ACTION

1. This is an action for misappropriation of trade secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.) and the Texas Uniform Trade Secrets Act (Tex. Civ. Prac. & Rem. Code § 134A.001 et seq.), as well as claims under Texas law for conversion, breach of contract, and tortious interference with existing and potential business relationships, breach of fiduciary duty,

and civil conspiracy, all arising from Defendants' wrongful acquisition, dominion, use, and disclosure of Axiom Space's confidential information and proprietary trade secrets. Dean-Pope's theft cannot go unpunished.

## PARTIES

2.  Plaintiff Axiom Space is a corporation organized under the laws of Delaware, with its principal place of business in Houston, Texas.

3.  Defendant Opus Solaris is a limited liability company organized under the laws of Florida, with its principal place of business in Middleburg, Florida. Opus Solaris is subject to personal jurisdiction in this Court due to its contacts with Texas, including the acts alleged here.

4.  Defendant Dean-Pope is an individual whose last known residence is in Middleburg, Florida. Dean-Pope is subject to personal jurisdiction in this Court due to her contacts with Texas, including the acts alleged here. Dean-Pope also agreed that "[t]the parties agree that the Company may elect to venue such action in the federal or state courts of the State of Texas, and that such courts shall have personal jurisdiction over the parties." Employee Confidential Information and Inventions Assignment Agreement, § 14.1(b).

## JURISDICTION AND VENUE

5.  This Court has subject-matter jurisdiction as authorized under 28 U.S.C. § 1331 (federal-question jurisdiction) based on the Defend Trade Secrets Act claim, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, as they arise from the same nucleus of operative facts.  And there is diversity jurisdiction under 28 U.S.C. § 1332.

6.  Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this District. Also, "[t]he parties agree that the Company may elect to venue such action in the federal or state courts of the State of Texas, and that such courts shall have personal jurisdiction over the parties."

## FACTUAL ALLEGATIONS

**A. Axiom Space Is an Industry Leader.**

7.    Axiom Space is a pioneering American aerospace company headquartered in Houston, Texas, focused on advancing human space exploration through the development of commercial space infrastructure. Founded in 2016 by Kamal Ghaffarian, a serial space and energy entrepreneur, and Michael Suffredini, a former NASA International Space Station ("ISS") Program Manager, the company aims to create a thriving ecosystem in low Earth orbit ("LEO"). Axiom Space is in the process of constructing the world's first commercial space station, Axiom Station, with its initial module scheduled to launch in late 2026. And the company has already made significant strides, including orchestrating private astronaut missions to the ISS as well as developing next-generation spacesuits for NASA. Its efforts are driven by a mission to expand access to space for research, manufacturing, and human habitation.

8.    Axiom Space has achieved several notable milestones and garnered recognition for its innovative contributions. In 2020, it successfully completed the System Requirements Review for Axiom Station with NASA, marking a critical step in its development. The company made history in April 2022 with the Ax-1 mission, the first all-private astronaut mission to the ISS, conducted in partnership with SpaceX using the Dragon spacecraft. This mission paved the way for future private spaceflight endeavors. In 2022, Axiom Space was awarded NASA's first task order to design and to build next-generation spacesuits for the Artemis program, highlighting its role in supporting lunar exploration. Additionally, the company completed Preliminary and Critical Design Reviews for its Axiom Station modules (AxH1 and AxH2) in 2021, thereby affirming its technical progress toward a 2026 launch.

9.    Axiom Space celebrated its eighth anniversary in August 2024, marking years of progress in private astronaut missions, spacesuit development, space station construction, as well as

philanthropic pursuits. For example, its Science, Technology, Art, and Research in Space Scholarship, launched in 2021, awarded $1,000 prizes to students for innovative microgravity research proposals, thereby demonstrating its commitment to education and innovation. Axiom Space is a trailblazer in the new space economy on all fronts.

10. As a byproduct of its industry-leading efforts, Axiom Space has developed, documented, trained on, enforced, and thereby protected valuable trade secrets, including but not limited to spacesuit manufacturing techniques, blueprints for the world's first commercial Space station, proprietary customer lists, business plans, strategies, and procedures, and procedures for conducting medical research in conditions of microgravity, which derive independent economic value from their secrecy and are subject to reasonable efforts to maintain confidentiality (collectively, the "Trade Secrets"). And Axiom Space has amassed—as well as rigorously documented, trained on, enforced, and thereby protected—proprietary and confidential information (collectively, the "Confidential Information"), which provides the company with marketplace leverage as well as a competitive advantage over other companies in the space industry.

11. From April 27, 2023 until August 30, 2024, Axiom Space employed Dean-Pope as the company's Senior Director of Enterprise sales. In this capacity, Dean-Pope was responsible for developing relationships with Fortune 100 customers for the purpose of creating large revenue-generating deals in the areas of human spaceflight, media, sponsorship, research, and manufacturing—as well as uncovering new business opportunities. As part of her employment, Dean-Pope received a generous salary, a relocation bonus, and participated in an incentive plan.

12. During Dean-Pope's employment with Axiom Space, she was given significant responsibility for planning and for executing long-term key strategic initiatives.

13. For instance, Dean-Pope led a project to recruit and to resource a manned spaceflight on Axiom Space assets, featuring a team of astronauts entirely from the United Kingdom. As part of organizing this "All UK Space Mission," Dean-Pope traveled to the United Kingdom and made contact with several figures in the British space industry who became partners of Axiom Space.

14. On July 24, 2024, Dean-Pope posted on her LinkedIn page about the All UK Space Mission project. In this post, she took exclusive credit for developing the mission, indicating that she overcame significant doubt from Axiom Space to make the project a reality. In the post, and in her formal exit interview with Axiom, Dean-Pope indicated that she felt underappreciated and unrecognized by Axiom Space despite her contributions.

15. But on the contrary Axiom Space placed significant trust in Dean-Pope, and Axiom Space expected Dean-Pope to carry and thereby take seriously her duty of loyalty and fidelity to Axiom Space. Indeed, Axiom Space placed so much trust in Dean-Pope that the company permitted her to give an internal presentation about her space marketing side business Opus Solaris, never once expecting that she would turn against them, both during and after her employment with Axiom Space, by using the property of Axiom Space for pecuniary gain both for herself and for Opus Solaris as part of a conspiracy between the two.

**B. Dean-Pope Signed a Confidentiality Agreement with Several Relevant Provisions.**

16. On May 3 of 2023, Dean-Pope executed the Employee Confidential Information and Inventions Assignment Agreement (the "CIIAA"). The CIIAA required that Dean-Pope hold in confidence and not disclose or use any Confidential Information, except as required in connection with her work for Axiom Space. The CIIAA defined Confidential Information to include all of the following:

> trade secrets, Inventions (further defined in Section 2.12.1 of the CIIAA), ideas, processes, formulas, software in source or object code, data, technology, know-how, designs and techniques, and any other work product of any nature, and all Intellectual Property Rights in all of the foregoing, including all Company

Inventions and Company Works of Authorship (further defined in Section 2.1 of the CIIAA); (b) information regarding research, development, new products, business and operational plans, budgets, unpublished financial statements and projections, costs, margins, discounts, credit terms, pricing, quoting procedures, future plans and strategies, capital-raising plans, internal services, suppliers and supplier information; (c) information about customers and potential customers of Company, including customer lists, names, representatives, their needs or desires with respect to the types of products or services offered by Company, and other nonpublic information; (d) information about Company's business partners and their services, including names, representatives, proposals, bids, contracts, and the products and services they provide; (e) information regarding personnel, employee lists, compensation, and employee skills.

§ 1.1. The CIIAA also required Dean-Pope to assign any intellectual property while employed at Axiom Space, making an exception only for "any Invention that I develop entirely on my own time without using Company's equipment, supplies, facilities, trade secrets, or Confidential Information." *Id.* at § 2.2.

17. In executing the CIIAA, Dean-Pope further agreed that any "Company information or documentation to which she had access during her employment, regardless of whether it contained Confidential Information, remained the property of Company and could not be downloaded or retained for her personal use or for any use that is outside the scope of her duties to Axiom Space." *Id.*

18. In executing the CIIAA, Dean-Pope further agreed to a non-solicitation clause, which stated the following:

Non-Solicitation. I agree that during my employment and for the one year period after the date my employment ends for any reason, including but not limited to voluntary termination by me or involuntary termination by Company, I will not, as an officer, director, employee, consultant, owner, partner, or in any other capacity, either directly or through others, except on behalf of Company:

(a) solicit, induce, encourage, or participate in soliciting, inducing, or encouraging any person known to me to be an employee, consultant, or independent contractor of Company to terminate his, her, or its relationship with Company;
(b) solicit, induce, encourage, or participate in soliciting, inducing, or encouraging any person known to me to be an employee, consultant, or independent contractor of Company to terminate his, her, or its relationship with Company to render services to me or any other person or entity that researches, develops,

markets, sells, performs, or provides or is preparing to develop, market, sell, perform, or provide Conflicting Services (as defined below);

(c) Hire, employ, or engage in a business venture with as partners or owners or other joint capacity, or attempt to hire, employ, or engage in a business venture as partners or owners or other joint capacity, with any person then employed by Company or who has left the employment of Company within the preceding three months to research, develop, market, sell, perform, or provide Conflicting Services;

(d) Solicit, induce, or attempt to induce any Customer or Potential Customer (as defined below), to terminate, diminish, or materially alter in a manner harmful to Company its relationship with Company;

(e) Solicit or assist in the solicitation of any Customer or Potential Customer to induce or attempt to induce such Customer or Potential Customer to directly or indirectly purchase or contract for any Conflicting Services; or

(f) Perform, provide or attempt to perform or provide any Conflicting Services for a Customer or Potential Customer.

*Id.* § 5.1.

19. In executing the CIIAA, Dean-Pope further agreed to a noncompete clause, which stated as follows:

In consideration for the receipt of Confidential Information as part of my role at Company, I agree that for the one year period after the date my employment ends for any reason, including but not limited to voluntary termination by me or involuntary termination by Company, I will not, directly or indirectly, as an officer, director, employee, consultant, owner, partner, or in any other capacity solicit, perform, or provide, or attempt to perform or provide Conflicting Services (defined below) anywhere in the Restricted Territory (defined below), nor will I assist another person to solicit, perform or provide or attempt to perform or provide Conflicting Services anywhere in the Restricted Territory.

*Id.* § 6.1.

20. In executing the CIIAA, Dean-Pope further agreed that, when she ceased to be employed by Axiom Space, she would "deliver immediately" to Axiom Space "all property," "including but not limited to all written and electronic materials, together with all copies, including hard and electronic copies, thereof, containing or disclosing any Company Inventions, or Confidential Information," and that she would "not copy, delete, or alter any information contained on any Company computer or Company equipment before [she] return[ed] it to Company." *Id.* § 9.

7

21. The CIIAA also bore an arbitration clause limited to her actions as an employee—and not as a thief:

> I agree that in the event that informal efforts to resolve disputes pursuant my employment with Company are unsuccessful, then any dispute, claim, or controversy arising out of or related to my recruitment, employment, or the termination of my employment with the Company, and any controversy, claim, or dispute arising out of or relating to this Agreement, or the breach thereof, shall be determined not in a court of law, but instead settled by mandatory by arbitration in the United States, in the State of Texas and the County of Harris.

*Id.* § 14.1.

22. The CIIAA also had a conspicuous carveout: "Notwithstanding the foregoing, the Company may bring a court action for injunctive relief to enforce this Agreement. The parties agree that the Company may elect to venue such action in the federal or state courts of the State of Texas, and that such courts shall have personal jurisdiction over the parties." *Id.* § 14.1(b). And to advance that provision, Dean-Pope further agreed to the following in support of Axiom Space's right to seek court-order relief:

> I agree that (a) it may be impossible to assess the damages caused by my violation of this Agreement or any of its terms, (b) any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to Company, and (c) Company will have the right to enforce this Agreement by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that Company may have for a breach or threatened breach of this Agreement. If Company enforces this Agreement through a court order, I agree that the restrictions of Sections 5 and 6 will remain in effect for a period of 12 months from the effective date of the order enforcing the Agreement.

*Id.* § 10. Though Dean-Pope would later conspire with Opus Solaris, Opus Solaris was not a signatory to that agreement.

**C. Dean-Pope Created and Managed a Competing Enterprise, Opus Solaris, While Employed at Axiom Space.**

23. Since February of 2023, Opus Solaris has maintained a website at https://opussolaris.com. And the website features portraits and incomplete profiles of Dean-Pope and her husband, Kevin

Pope, alongside several AI-generated portraits of what appear to be fictitious employees. The remainder of the website consists of AI-generated images and articles, as well as what appear to be AI-generated reviews of Opus Solaris. Aside from Pope and Dean-Pope, there do not appear to be any actual individuals associated with Opus Solaris.

## MEET OUR STELLAR TEAM

At Opus Solaris, our team of experts is dedicated to propelling your business to new heights in the space industry. With a blend of innovation, experience, and passion, we are here to guide you through every step of your journey.

  

*Figure 1: Screenshot of opussolaris.com taken on 13 March 2025, showing Dean-Pope and Pope along with an AI-generated headshot.*

# OUR PROFESSIONAL ADVISORS

Meet the brilliant minds behind Opus Solaris. Our advisors bring a wealth of knowledge and experience in the space industry, ensuring your business reaches stellar heights.


**DR. EMILY CARTER**
Senior Space Consultant


**JAMES O'NEIL**
Financial Advisor


**SOPHIA MARTINEZ**
Marketing Strategist


**LIAM JOHNSON**
Technical Advisor

*Figure 2: Screenshot of opussolaris.com taken on 13 March 2025 showing AI-generated headshots.*

24. Sometime after midnight on March 13, 2025—which happened to coincide after an attorney meeting involving counsel for Dean-Pope and counsel for Axiom Space— opussolaris.com was put behind a login, thereby making content unavailable to viewers. And then at some point the next day, the site again became live.



*Figure 3: Screenshot of opussolaris.com taken on 14 March 2025.*

10

**D. Dean-Pope Incorporates Opus Solaris and Resigns from Axiom Space.**

25. On July 29, 2024, while conducting Texas-based business, Dean-Pope submitted a letter of resignation from her position as Senior Director of Enterprise Sales at Axiom Space. In that letter, Dean-Pope acknowledged that she would remain employed with Axiom Space until August 30, 2024.

26. In that letter, Dean-Pope listed her correspondence address as 3721 Creek Hollow Lane, Middleburg, Florida 32068. That is so despite the fact that Axiom Space at all relevant times transacted its principal business from its headquarters in Houston.

27. On August 19, 2024, while still working for Axiom Space, Dean-Pope and Pope established Opus Group, LLC under the laws of the State of Florida.

28. On August 23, 2024, while Dean-Pope was still working for Axiom Space, Pope established Opus Solaris. Opus Solaris is the only entity in which Opus Group is a member, and Opus Group is Opus Solaris's only member.

**E. At Least on Her Last Day of Employment, Dean-Pope Conspires with Opus Solaris by Sending Trade Secrets and Confidential Information to Opus Solaris.**

29. Between August 12, 2024 and August 30, 2024—the last day of her employment at Axiom Space—Dean-Pope worked after hours to create shareable links from her Axiom Space OneDrive account and then knowingly and intentionally shared them with Opus Solaris as part of a scheme between Dean-Pope and Opus Solaris to steal and then use Axiom Space's confidential property. All of this was done using Axiom's Houston-based technology platforms. Although the investigation is ongoing, in total, Dean-Pope sent roughly 19 emails, containing at least 66 attachments to Opus Solaris. Many of the documents that Dean-Pope sent included Axiom Space documents with a Proprietary and Confidential label, including specific proposals between Axiom Space and multiple governments (such as the United States, Türkiye, Brazil, India, the United Kingdom, and others), in which sensitive commercial terms like budgets, operational plans, and

technical specifications were detailed. In particular, Dean-Pope stole significant files related to the All UK Space Mission. All of the files stolen contained Trade Secrets and Confidential Information belonging to Axiom Space.



*Figure 4: First Email from Dean-Pope to Opus Solaris.*



*Figure 5: Second Email from Dean-Pope to Opus Solaris.*



*Figure 6: Third Email from Dean-Pope to Opus Solaris.*

30. During the same period, Dean-Pope exported from her Axiom Space account multiple contact lists that included the email addresses, phone numbers, names, and organizational affiliations of at least 649 Axiom Space customers, partners, vendors, and internal personnel. These lists were shared with Opus Solaris. Many of the contacts exported were existing or prospective business contacts with whom Axiom Space was then engaged in sensitive contractual discussions about pending business opportunities, as well as partners with whom Axiom Space maintained close commercial relations. The contacts exported included numerous individuals employed by NASA, as well as commercial and governmental space actors based in the United Kingdom with whom Axiom Space either maintained or was pursuing commercial relationships, including as part of the All UK Space Mission.

31. During the same period, Opus Solaris communicated with nine other employees of Axiom Space, including high-level employees with sensitive knowledge of ongoing commercial and technical projects pursued by Axiom Space. In total, Opus Solaris received 85 separate communications with various employees of the Axiom Space.

**F. Dean-Pope and Opus Solaris Agree and Then Work Together to Use for Financial Gain the Trade Secrets and Confidential Information.**

32. After her employment ended, on September 3, 2024, Dean-Pope signed the "Reminder of your CIIAA Obligations" document, in which she reacknowledged and reaffirmed her adherence to the provisions of the CIIAA, which she had just violated approximately 72 hours before by sending the Trade Secrets and Confidential Information to an email address belonging to Opus Solaris, a competitive enterprise.

33. Between August 30, 2024 (her last day with Axiom Space) and January of 2025, Dean-Pope held herself out to the public as the CEO and Owner of Opus Solaris. Dean-Pope made posts on LinkedIn, was interviewed on YouTube, appeared on podcasts, and otherwise engaged with the public on subjects related to space exploration and development, all in her capacity as the CEO of Opus Solaris. In these engagements, Dean-Pope made references to her experience with Axiom Space and her desire to share the experience she gained there with other participants in the space industry.

34. In January 2025, Dean-Pope began working as the Vice President for Commercial Partnerships at Vast Space, LLC—a direct competitor of Axiom Space. For one, Vast Space is an American aerospace company working on commercial space stations. Founded by Jed McCaleb, it plans to launch Haven-1, its first space station, in 2025, with a larger Haven-2 to follow in the 2030s. For another, the company aims to support long-term human habitation in space and is partnering with SpaceX for launches.



*Figure 7: Dean-Pope's Biography as an Employee of Vast Space, taken on March 14, 2025, via https://www.vastspace.com/team.*

35. Since Dean-Pope left Axiom Space, both Dean-Pope and Opus Solaris have pursued business relationships through contacts that Dean-Pope had exported from her Axiom Space inbox, including government and private actors in both the United States and United Kingdom. At times, this activity has intentionally and directly interfered with existing exclusive Axiom Space business relationships and engagements. For example, at some point prior to February 5, 2025, while she was employed with a competitor of Axiom Space, Dean-Pope had a conversation with an Axiom Space industry partner based in the United Kingdom (the "UK Partner"). Axiom Space partner, about the "All UK Space Mission," an existing, confidential project on which the UK Partner and Axiom Space were then collaborating. Dean-Pope had previously worked on the All UK Space Mission while at Axiom Space and had sent to Opus Solaris documents on the project's technical, commercial, and operational details in her closing days of employment at Axiom Space. According to the UK Partner, Dean-Pope viewed the All UK Space Mission as "her baby," despite it being

an Axiom project. During this conversation, Dean-Pope sought to involve and thereby inject herself into this project, despite knowing that it was an Axiom Space-UK Partner endeavor and confidential in nature.

36. After the UK Partner had this conversation with Dean-Pope, the UK Partner changed its negotiating position on a non-compete provision in a contract it was then drafting with Axiom Space. While previously the UK Partner had not addressed the non-compete, it now insisted that it be removed, rendering the UK Partner's relationship with Axiom Space less valuable than it had previously been.

37. After Dean-Pope joined, Vast Space began to seek business more aggressively in markets where Axiom Space already had built a strong presence—and about which Dean-Pope had stolen confidential Axiom Space information. For instance, in February of 2025, after Dean-Pope had joined Vast, Vast personnel held meetings with space officials in Türkiye in which they differentiated themselves aggressively from Axiom, using information about Axiom's manufacturing processes that Dean-Pope had stolen to emphasize their relative advantage. Also in February of 2025, Dean-Pope held conversations with space industry participants in Germany who were partners of Axiom Space. Her possession of Axiom Space Confidential Information and Trade Secrets helped her use these conversations to undermine Axiom Space's business.

38. This activity could not have been accomplished without using Confidential Information and Trade Secrets. Dean-Pope and Opus Solaris's deliberate decision to pilfer Axiom Space's hard-won commercial, technical, and operational knowledge—including hard-to-find email addresses of clients, sensitive commercial information on Axiom Space bids, technical details on Axiom Space's capabilities, and direct feedback on proposals that had already been submitted— put Axiom Space at a significant disadvantage vis-à-vis direct competitors.

39. Axiom Space first learned of the data exfiltration to Opus Solaris in January 2025, when it learned that Dean-Pope had been hired to a senior leadership position at a direct commercial competitor. At that time, Axiom Space researched logs associated with Dean-Pope's account and discovered her extensive exfiltration of Confidential Information and Trade Secrets detailed above.

40. On January 17, 2025, Axiom Space sent Dean-Pope a cease-and-desist letter both to her email and to her principal office. On January 24, Dean-Pope responded acknowledging receipt of the letter.

41. As contractually obligated, the parties attempted to resolve this dispute. Axiom Space made three simple requests to Dean-Pope: that she immediately cease and desist any use or disclosure of Axiom Space Confidential Information and Trade Secrets, that she make her personal devices available for a forensic analysis, and that she detail her actions with Axiom Space Confidential Information and Trade Secrets and declare all locations in which it was stored. These three simple demands were, however, too much for Dean-Pope to fulfill because she knew that even a cursory analysis would reveal misappropriation of sensitive Confidential Information and Trade Secrets.

42. Axiom Space has been diligent in attempting to use "informal efforts to resolve disputes" between the company and Dean-Pope, but every attempt to resolve the matter now before this Court has been met with obstruction, obfuscation, and delay by Dean-Pope. CIIAA § 14.1(b). Indeed, Dean-Pope strung Axiom Space along with pretending to be amenable to a forensic investigation into the matter only to inform Axiom Space on March 14 that she would only cooperate with these "informal" efforts after she secured a complete release of all her wrongdoing. This turn of events made unquestionably clear that she was never serious about resolving the matter, and that negotiations with thieves will only go so far.

43. After Axiom Space was unable to obtain written assurances from Dean-Pope that she had not destroyed relevant information, that she had honored her evidence-preservation obligations,

that she would abide by her contractual obligations, and that she would cooperate with a forensic investigation to exonerate her of any wrongdoing, Axiom Space was left no choice but to seek relief from this Court. In agreeing that Axiom Space has court-backed "legal and equitable remedies" for violations such as these, Dean-Pope could not have said it better herself:

> I agree that (a) it may be impossible to assess the damages caused by my violation of this Agreement or any of its terms, (b) any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to Company, and (c) Company will have the right to enforce this Agreement by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that Company may have for a breach or threatened breach of this Agreement. If Company enforces this Agreement through a court order, I agree that the restrictions of Sections 5 and 6 will remain in effect for a period of 12 months from the effective date of the order enforcing the Agreement.

CIIAA § 10.

**FIRST CAUSE OF ACTION: Violation of the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836)**

44. Axiom Space incorporates all proceeding and succeeding paragraphs as if fully set forth here. And Axiom Space asserts this cause of action against both Dean-Pope and Opus Solaris.

45. The information sent by Dean-Pope to Opus Solaris was done with the objective of unfairly competing with Axiom Space. As the recipient exercising substantial assistance, Opus Solaris knowingly and intentionally sought out and received this protected information with the intent and desire to use the information to the commercial disadvantage and harm of Axiom Space.

46. Standing alone independent of any contract in place, the information constitutes trade secrets within the meaning of the DTSA. *See* 18 U.S.C. § 1839(3). That is so not least because Axiom Space had (and has) robust protections and protocols in place to protect the secrecy of this information outside of any contracts to which Dean-Pope was a party. Alternatively, and in addition, the Confidential Information and Trade Secrets defined in the CIIAA meet the definition of trade secrets for the reasons above and below.

47. This information is a compilation of proprietary and highly sensitive commercial and technical information related to Axiom Space's established customers, partners, employees, and projects, which derives independent value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons, who can obtain economic value from its disclosure or use.

48. At all relevant times, Axiom Space took reasonable steps to maintain the secrecy of its trade secrets by (a) housing all information within secure information environments; (b) training and binding all employees, including Dean-Pope, to maintain the confidentiality and secrecy of the information; and (c) implementing policies and procedures to protect the confidentiality and secrecy of the information.

49. Dean-Pope misappropriated the Confidential Information and Trade Secrets under 18 U.S.C. § 1839(5) by acquiring it through improper means and then disclosing them without consent, in a manner affecting interstate commerce. In particular, while in Houston, Dean-Pope emailed the information to Opus Solaris in Florida. In doing so, Dean-Pope knew that she was in violation of her agreements with Axiom Space, and she did so nonetheless to solicit business away from Axiom Space as well as to unlawfully acquire and then use in competitive fashion in Axiom Space's industry valuable information over which Axiom Space has sole ownership and to which it has the sole rights.

50. As the direct and proximate result of Dean-Pope's misappropriation, Axiom Space has not only suffered monetary damages, but has suffered, and unless preliminarily and permanently enjoined by this Court, will continue to suffer irreparable harm to its business and intellectual property, as well as its goodwill and advantageous business relationships with prospective customers. As detailed above, Trade Secrets stolen by Dean-Pope have actively been used and

continue to be used by Dean-Pope and Opus Solaris to pursue business opportunities, to Axiom Space's detriment.

51. The misappropriated secrets at issue relate to products that are bought, shipped, resold, and used in interstate commerce. They also bare confidential and proprietary information related to Axiom Space's customers located throughout the 50 states and abroad.

52. There is no remedy at law adequate to prevent the irreparable harm occasioned by Defendants' ongoing misappropriation, thereby necessitating the entry of a preliminary and permanent injunctive relief in accordance with DTSA, *See* 18 U.S.C. 1836(b)(1).

53. Defendants' misappropriation was willful and malicious, entitling Axiom Space to exemplary damages and attorneys' fees.

### SECOND CAUSE OF ACTION: Violation of the Texas Uniform Trade Secrets Act ("TUTSA") (Tex. Civ. Prac. & Rem. Code § 134A.001 et seq.)

54. Axiom Space incorporates all proceeding and succeeding paragraphs as if fully set forth here. And Axiom Space asserts this cause of action against both Dean-Pope and Opus Solaris.

55. The information sent by Dean-Pope to Opus Solaris was done with the objective of unfairly competing with Axiom Space. As the recipient exercising substantial assistance, Opus Solaris knowingly and intentionally sought out and received this protected information with the intent and desire to use the information to the commercial disadvantage and harm of Axiom Space.

56. Standing alone independent of any contract in place, the information constitutes trade secrets within the meaning of the TUTSA. That is so not least because Axiom Space had (and has) robust protections and protocols in place to protect the secrecy of this information outside of any contracts to which Dean-Pope was a party. Alternatively, and in addition, the Confidential Information and Trade Secrets defined in the CIIAA meet the definition of trade secrets for the reasons above and below.

57. The information sent by Dean-Pope to Opus Solaris constitutes trade secrets within the meaning of Section 134.002(6) of TUTSA. This information is not only a "list of actual . . . customers," but also a compilation of proprietary and highly sensitive commercial and technical information related to Axiom Space's, partners, employees, and projects, any and all of which derives independent value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons, who can obtain economic value from its disclosure or use.

58. At all relevant times, Axiom Space took reasonable steps to maintain the secrecy of its trade secrets by (a) housing all information within secure information environments; (b) training and binding all employees, including Dean-Pope, to maintain the confidentiality and secrecy of the information; and (c) implementing policies and procedures to protect the confidentiality and secrecy of the information.

59. Dean-Pope misappropriated the Trade Secrets under Tex. Civ. Prac. & Rem. Code § 134A.002(3) by acquisition through breach of a duty and then use without authorization. In particular, Dean-Pope emailed secrets to Opus Solaris. In doing so, Dean-Pope knew that she was setting the groundwork, in agreement with Opus Solaris, to solicit business from Axiom Space as well as to unlawfully acquire and then use in competitive fashion in Axiom Space's industry valuable information over which Axiom Space has sole ownership and to which it has the sole rights.

60. As the direct and proximate result of the Dean-Pope's misappropriation of trade secrets, Axiom Space has not only suffered monetary damages, but has suffered and, unless preliminarily and permanently enjoined by this Court, will continue to suffer irreparable harm to its business and intellectual property, as well as its goodwill and advantageous business relationships with prospective customers. As detailed above, Trade Secrets stolen by Dean-Pope have actively been

used and continue to be used by Dean-Pope and Opus Solaris to pursue business opportunities, to Axiom Space's detriment.

61. There is no remedy at law adequate to prevent the irreparable harm occasioned by the Defendants' ongoing misappropriation of trade secrets, thereby necessitating the entry of a preliminary and permanent injunctive relief.

62. Defendants' actions were willful and malicious, entitling Axiom Space to exemplary damages and attorneys' fees under Tex. Civ. Prac. & Rem. Code § 134A.004.

### THIRD CAUSE OF ACTION: Conversion (Texas Common Law)

63. Axiom Space incorporates all proceeding and succeeding paragraphs as if fully set forth here. And Axiom Space asserts this cause of action against both Dean-Pope and Opus Solaris.

64. Axiom Space had a possessory right to the Trade Secrets, Confidential Information, and related property.

65. Dean-Pope and Opus Solaris wrongfully exercised dominion and control over Plaintiff's property by taking, using, and disclosing it, constituting conversion under Texas law.

66. Dean-Pope and Opus Solaris continue to exercise dominion and control over Plaintiff's Trade Secrets, Confidential Information, and other proprietary information, which they continue to use to develop a competing business concern. Despite Axiom Space's reasonable demand that Dean-Pope surrender any Confidential Information and Trade Secrets, that she cease using Confidential Information and Trade Secrets, and that she submit to a forensic examination to verify that she has complied with her contractual obligation to remove Confidential Information and Trade Secrets from her possession, Dean-Pope has refused to do so, posing a continued threat to the integrity and value of Axiom Space's property.

67. Defendants' conversion proximately caused Axiom Space damages, including monetary damages as well as irreparable harm to business and intellectual property. As detailed above, Trade

Secrets stolen by Dean-Pope have actively been used and continue to be used by Dean-Pope and Opus Solaris to pursue business opportunities, to Axiom Space's detriment.

68. There is no remedy at law adequate to prevent the irreparable harm occasioned by the Defendants' ongoing conversion, thereby necessitating the entry of a preliminary and permanent injunctive relief.

**FOURTH CAUSE OF ACTION: Breach of Contract (Texas Common Law)**

69. Axiom Space incorporates all proceeding and succeeding paragraphs as if fully set forth here. And Axiom Space asserts this cause of action against Dean-Pope.

70. During the period of her tenure at Axiom Space, Dean-Pope was bound by the CIIAA which constituted a valid, enforceable contract between Axiom Space and Dean-Pope. As detailed above, the CIIAA contained provisions restricting Dean-Pope from either disclosing company Confidential Information and Trade Secrets, soliciting company business partners and customers, directly competing with the company, and soliciting company employees in an attempt to convince them to leave the company. These obligations continued to bind Dean-Pope for a period of one year following the termination of her employment on August 30, 2024.

71. Axiom Space performed its obligations under the CIIAA during Dean-Pope's employment with Axiom Space.

72. Dean-Pope breached the CIIAA by sharing Trade Secrets and Confidential Information with Opus Solaris, by engaging in business development activities directed toward clients and partners of Axiom Space, and by causing employees of Axiom Space to be contacted by Opus Solaris.

73. Dean-Pope's breach of the CIIAA proximately caused Axiom Space damages, including monetary damages as well as irreparable harm to business and intellectual property. In particular, Dean-Pope used Axiom Space information and property to divert business opportunities from

Axiom Space to her and Opus Solaris for personal gain. This information and property comprised highly detailed and sensitive records pertaining to Axiom Space's commercial, technical, and operational plans. Dean-Pope removed this information from its secure storage within networks owned by Axiom Space and used it to engage in marketing and business development activities on behalf of Solaris, to contact clients with whom Axiom Space either maintained or sought to build commercial relationships, and to contact employees of Axiom Space in violation of her non-solicitation obligations. As detailed above, Trade Secrets stolen by Dean-Pope have actively been used and continue to be used by Dean-Pope and Opus Solaris to pursue business opportunities, to Axiom Space's detriment.

74. There is no remedy at law adequate to prevent the irreparable harm occasioned by the Dean-Pope's ongoing breaches, thereby necessitating the entry of a preliminary and permanent injunctive relief.

### FIFTH CAUSE OF ACTION: Tortious Interference with Business Relationships (Texas Common Law)

75. Axiom Space incorporates all proceeding and succeeding paragraphs as if fully set forth here. And Axiom Space asserts this cause of action against both Dean-Pope and Opus Solaris.

76. Axiom Space had valid business relationships with certain customers and partners that, during the period of the events described above, resulted in economic benefit and which were likely to continue to result in economic benefit.

77. By and through the misconduct alleged here, and through the improper means of appropriating Axiom Space's Confidential Information and Trade Secrets, Dean-Pope and Opus Solaris tortiously interfered with one or more of Axiom Space's business relationships with established customers. In particular, as detailed above, Dean-Pope interfered with Axiom Space's relationships with space industry partners in the United Kingdom.

24

78. All the acts of tortious interference with Axiom Space's economic relations were done with actual malice toward Axiom Space and with the specific intent of injury Axiom Space's business.

79. As the direct and proximate result of the acts of tortious interference with Axiom Space's business relations with its established customers, Axiom Space has not only suffered monetary damages, but has suffered, and unless preliminarily and permanently enjoined by this Court, will continue to suffer irreparable harm to its goodwill and advantageous business relationships with its actual and potential customers.

80. There is no remedy at law adequate to prevent the irreparable harm occasioned by Dean-Pope and Opus Solaris's ongoing acts of tortious interference with Axiom's business relations, thereby necessitating the entry of a preliminary and permanent injunctive relief.

### SIXTH CAUSE OF ACTION: Tortious Interference with Prospective Business Relationships (Texas Common Law)

81. Axiom Space incorporates all proceeding and succeeding paragraphs as if fully set forth here. And Axion Space asserts this cause of action against both Dean-Pope and Opus Solaris.

82. At all relevant times, Axiom Space enjoyed advantageous business relationships with its established customers identified in the Confidential Information and Trade secrets.

83. By and through the misconduct alleged here, and through the improper means of misappropriating Axiom Space's Confidential Information and Trade Secrets, Dean-Pope, while employed by Axiom Space and despite having knowingly consented to the provisions of the CIIAA, tortiously interfered with one or more business relationships that Axiom Space enjoyed or sought to develop with prospective customers identified in the misappropriated Confidential Information and Trade Secrets. In particular, Dean-Pope interfered with prospective relationships with partners in the United Kingdom, Türkiye, and Germany – all countries about which she had previously stolen Axiom Space Confidential Information. Once it received pilfered information from Dean-Pope, Opus Solaris also interfered with these relationships.

84. All acts of tortious interference with Axiom Space's economic relations done by Defendants were calculated to and, in fact, did cause economic injury to Axiom Space in the conduct of its lawful business.

85. All acts of tortious interference with Axiom Space's economic relations were done by Defendants with actual malice toward Axiom Space and with the specific intent of injuring Axiom Space's business.

86. As the direct and proximate result of the acts of tortious interference with Axiom Space's business relations with its established customers done by Defendants, Axiom Space has not only suffered monetary damages, but has suffered, and unless preliminarily and permanently enjoined by this Court, will continue to suffer irreparable harm to its goodwill and advantageous business relationships with its actual and potential customers.

87. There is no remedy at law adequate to prevent the irreparable harm occasioned by Defendants' ongoing acts of tortious interference with Axiom Space's business relations, thereby necessitating the entry of a preliminary and permanent injunctive relief.

**SEVENTH CAUSE OF ACTION: Breach of Fiduciary Duty (Texas Common Law)**

88. Axiom Space incorporates all proceeding and succeeding paragraphs as if fully set forth here. And Axiom Space asserts this cause of action against Dean-Pope.

89. During the term of her tenure as an employee of Axiom Space, Dean-Pope was placed in a position of trust and, therefore, owed a fiduciary duty of loyalty to Axiom Space in carrying out her job duties for the company. And this position of trust stood alone independent of any contract.

90. While still employed by Axiom Space, Dean-Pope abused her position of trust within the company by exfiltrating and thereby misappropriating Confidential Information and Trade Secrets for the benefit of a competing company, Opus Solaris. This information comprised highly detailed and sensitive records pertaining to Axiom Space's commercial, technical, and operational plans.

26

Dean-Pope removed this information from its secure storage within networks owned by Axiom Space and used it to engage in marketing and business development activities on behalf of Solaris, to contact clients with whom Axiom Space either maintained or sought to build commercial relationships, and to contact employees of Axiom Space in violation of her non-solicitation obligations.

91. As the direct and proximate result of Dean-Pope's breach of fiduciary duty, Axiom Space has suffered and continues to suffer damages and economic injury to its business.

92. There is no remedy at law adequate to prevent the irreparable harm occasioned by the Dean-Pope's ongoing breaches, thereby necessitating the entry of a preliminary and permanent injunctive relief.

**EIGHTH CAUSE OF ACTION: Civil Conspiracy (Texas Common Law)**

93. Axiom Space incorporates all proceeding and succeeding paragraphs as if fully set forth here. And Axiom Space asserts this cause of action against both Dean-Pope and Opus Solaris.

94. All the misconduct referenced here was in furtherance of an agreement or understanding between Defendants to unfairly compete with Axiom Space by misappropriating Axiom Space's Confidential Information and Trade Secrets and the other tortious acts alleged here.

95. Each Defendant knowingly and intentionally engaged in one or more unlawful or tortious acts in furtherance of this conspiracy or employed tortious means to accomplish an act not itself illegal, as described here. Each communicated with the other to acquire and transmit Confidential Information and Trade Secrets belonging to Axiom Space, with the objective of using this information to compete commercially with Axiom Space, including by developing competing proposals, communicating with existing and prospective Axiom Space customers, and soliciting Axiom Space employees.

96. As the direct and proximate result of the Defendants' civil conspiracy, Axiom Space has not only suffered monetary damages, but has suffered and, unless preliminarily and permanently enjoined by this Court, will continue to suffer irreparable harm to its business and intellectual property and its goodwill and contractual and/or advantageous relationships with its established customers.

97. There is no remedy at law adequate to prevent the irreparable harm occasioned by the Defendants' ongoing civil conspiracy, thereby necessitating the entry of a preliminary and permanent injunctive relief.

## REQUEST FOR RELIEF

Axiom Space respectfully requests that this Court:

A. Issue a preliminary and permanent injunction enjoining Defendants from further use, disclosure, or dissemination of Confidential Information, Trade Secrets, Axion Space information, and Axiom Space property.

(i) Defendants shall immediately cease and desist any further disclosure or use of the Axiom Space property, secrets, information, Confidential Information, Trade Secrets, and—after proper forensic preservation for litigation purposes—return all paper and destroy all electronic copies of such information in their possession custody or control to Axiom Space;

(ii) Dean-Pope will cease and desist any further violations of the CIIAA;

(iii) Opus Solaris will cease and desist any conspiring, assisting, aiding, or abetting of Dean-Pope's unlawful conduct;

(iv) Defendants will cease and refrain from soliciting business from Axiom Space's established customers, clients, and business partners;

(v) Defendants shall cease and desist any other acts in furtherance of their civil conspiracy to unlawfully misappropriate Axiom Space's property, secrets, information, Confidential Information, and Trade Secrets and to divert business from Axiom Space using such information.

B. Award Axiom actual damages in an amount to be proven at trial, but believed to be in excess of $75,000 as the direct and proximate result of Opus Solaris's misconduct as alleged here.

C. Award statutory damages under applicable law against Opus Solaris;

D. Award exemplary and punitive damages for Opus Solaris's willful and malicious conduct;

E. Award Axiom Space reasonable attorneys' fees and costs as permitted by law;

F. Award pre- and post-judgment interest; and

G. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Axiom Space demands a trial by jury on all issues so triable.

Dated: March 17, 2025

Respectfully submitted,

KING & SPALDING LLP

*/s/ J. Robert Sheppard III*
J. Robert Sheppard III (Attorney in Charge)
Texas Bar No. 24107910
1100 Louisiana Street, Suite 4100
Houston, TX 77002-5213
Telephone: 713.751.3200
Facsimile: 713.751.3290
rsheppard@kslaw.com

Alfonso Garcia Chan
Texas Bar No. 24012408
2601 Olive Street Suite 2300
Dallas, TX 75201
Telephone: 214.764.4600
Facsimile: 214.764.4601
achan@kslaw.com

Jesse Snyder (*attorney admission forthcoming*)
Texas Bar No. 24083884
Thomas Ewing (*pro hac vice* application forthcoming)
1700 Pennsylvania Avenue, NW Suite 900
Washington, DC 20006-4707
Telephone: 202.737.0500
Facsimile: 202.626.3737
jsnyder@kslaw.com
tewing@kslaw.com

**Attorneys for Axiom Space, Inc.**